48 CCPA

### Application of Willie FONG, Wilfred H. Ward, and Harold P. Lundgren.

Patent Appeal No. 6606.

United States Court of Customs and Patent Appeals.

April 14, 1961.

Worley, C. J., and Kirkpatrick, J., dissented.

T. A. Seegrist, Washington, D. C. (R. Hoffman, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

RICH, Judge.

This appeal is from the rejection of claims 12–17 of appellants' application Ser. No. 324,423, filed December 5, 1952, for "Use of Polyvinylpyrrolidone as a Soil-Suspending Agent." That agent will hereinafter be called "PVP." Claim 18 alone has been allowed, as a result of the board's reversal of its rejection.

The specification explains the invention and its background as follows:

"This invention relates to washing procedures particularly to the washing of textile materials such as fabrics and fibers with aqueous media. In particular the invention concerns the use of polyvinylpyrrolidone in the aqueous washing medium whereby to minimize the redeposition of soil during the washing procedure.

"It is well known in the art that a successful washing operation involves two separate factors, i. e., (a) the removal of dirt from the textile material and (b) keeping the soil suspended in the medium so that it will not be re-deposited on the textile. In general aqueous washing media containing soap fulfill both of

these criteria as soap not only is a good soil remover but also keeps the removed soil in suspension so that little re-deposition takes place. However, the present trend is toward the use of anionic synthetic detergents such as the alkyl benzene sulphonates since these agents can be used in hard water areas as their detersive power is not decreased by the presence of calcium and magnesium ions. However, these anionic detergents have the disadvantage that their suspending power is poor * * * and so cotton fabrics washed with such agents will be grayer than when using soap. In order to overcome this disadvantage, various soil-suspending agents are commonly added to the anionic detergents. One of the most commonly used agents is sodium carboxymethyl cellulose.

"It has now been found that polyvinylpyrrolidone has useful soil-suspending properties and when added to aqueous washing media the degree of soil re-deposition is greatly reduced."

The title of the application is striking in that it truly and succinctly states what the invention is, the *use* of PVP as a soil-suspending agent. Applicants did not invent a new process, solution, or composition except insofar as these possessed novelty by reason of the presence of PVP. As the specification makes clear, neither were they the inventors of the use of soil-suspending agents in washing. Their discovery was simply a new soil-suspending agent, a new use for a known compound. But because the law does not permit the claiming of such an invention in terms of use, the claims are directed to a process, a washing solution, or a composition for making the latter, conventional and recognized ways of claiming inventions predicated on the discovery of a new use.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

O'CONNELL, pursuant to provisions of Section 294 (d), Title 28, United States Code.

The appealed claims are illustrated by claims 12, 14, and 16:

"12. A process for removing soil from a textile material and minimizing the re-deposition of removed soil which comprises washing the material with a solution comprising water, an organic surface-active detergent, and polyvinylpyrroliodone.

"14. A washing solution which is effective not only to remove soil from textile materials but also to minimize re-deposition of removed soil comprising water, an organic surface-active detergent, and polyvinyl-pyrrolidone.

"16. A composition soluble in water to form a washing solution which is effective not only to remove soil from textile materials but also to minimize re-deposition of removed soil, comprising an organic surface-active detergent and polyvinylpyr-rolidone."

Claims 13, 15 and 17 are dependent on the next lower numbered claims, specifying that the average molecular weight of the PVP is from about 15,000 to about 40,000. Obviously these claims are but three ways of claiming the identical invention, which is the use of PVP in washing with a detergent.

The claim definition of the detergent as "an organic surface-active detergent" is so broad as to include practically any known detergent, including common soap as well as the "synthetic" detergents.[1] Applicants do not claim to have made any invention whatsoever with respect to the detergent to be used. In fact, their specification contains a list of possible known detergents about two and a half printed pages in length, says that any of them may be used and that their concentration is not critical. Hence the above appealed claims are broad enough to be infringed by the presence of PVP in practically any detergent or washing solution or composition for making the latter.

Claim 18, the only claim allowed, is dependent on claim 16 and specifies that the detergent therein is "a sodium alkyl benzene sulphonate wherein the alkyl group contains 12 to 18 carbon atoms." Issuance of a patent with this as the only claim would, therefore, teach the art the use of PVP as a soil-suspension agent with any detergent while limiting the protection to use of the invention in washing with the 12–18 carbon atom sodium alkyl benzene sulfonate as detergent. We turn now to the grounds on which the Patent Office deems this to be a necessary result.

The examiner rejected all of the claims on five different grounds. The Board of Appeals refused to sustain four of them and therefore there is only one ground for us to consider. That ground is that claims 12–17 are unpatentable over a German patent, No. 850,328, with an effective date of September 22, 1952, two and a half months ahead of applicants' filing date. Since that patent discloses washing compositions comprising a detergent and PVP, on which the appealed claims read, applicants undertook to swear back of this reference by an affidavit under Rule 131. Patent Office Practice Rules, 35 U.S.C.A.Appendix. The Patent Office has refused to accept the affidavit as overcoming the reference and whether it does is the ultimate issue; for the appealed claims must be allowed if the German patent is overcome as a reference, no other reason for their rejection being asserted.

No question is raised as to the sufficiency of the affidavit to show an actual reduction to practice, prior to September 22, 1952, of a composition, solution, and

---

1. Webster's New Collegiate Dictionary, 1956, says:
"*deterge*. * * * To cleanse; to purge away, as foul matter."
"*detergent*. * * * -n. A cleansing agent, as water, soap, or soluble or liquid preparation ('soapless soap'), usually synthetic, that resembles soap in the ability to emulsify oils and hold dirt in suspension." More technical definitions could be cited but they are in a constant state of change and would add nothing of value here.

process on which the claims read. The tests were laboratory tests dated between June 25 and 30, 1952, in which swatches of clean cotton cloth were "washed" in solutions containing PVP, detergent, builders, and carbon black (soil) in a "Launderometer," after which the cloth was removed, rinsed, dried and its reflectance measured to determine degree of cleanness, which is indicative of the effectiveness of the PVP.

The significant fact with respect to these tests, in view of the position taken by the Patent Office, is that they were conducted with solutions using only a single detergent, the same one named in the specific examples of the specification and the one named in the allowed claim 18, sodium alkyl ($C_{12}$–$C_{18}$) benzene sulfonate, also known and referred to in the affidavit as "Nacconol NRSF." It is "an organic surface-active detergent."

The disclosure of the German patent should be mentioned in view of certain misinterpretations which have been made of it. It makes no mention, incidentally, of soil suspension. It is entitled "Shaped Washing and Cleansing Agents" and opens with the statement that it has been discovered that PVP is "excellently adapted for use as an admixture in the shaping of soaps and other washing and cleansing agents." It says that PVP, in small amounts, produces better cohesion, especially in filled soaps, has a hardening effect and acts in the finished cake to promote the production, quantity, and stability of foam. There are two examples. Example 1 is stick shaving soap made from "shaving soap chips," "aromatic material" (which appellants say is perfume) and a 30% solution of PVP, the latter being said also to promote lathering and a pleasant after-shave feel-

ing. Example 2 is a filled cake soap made from "10 kg. of a sodium salt of a mixture of higher molecular aliphatic sulfonic acids * * * 77 kg. of a mixture of equal parts of clay and kaolin accompanied by moistening with 14 kg. of water and an admixture of 6.6 kg. of a 30% polyvinylpyrrolidone solution." It is said that the PVP makes for "good toughness," instead of "only slight internal cohesion" in its absence, and more abundant foam than similar "pieces" made without PVP.

This is the totality of the disclosure and we find no support in it for the solicitor's statements that it discloses "sodium alkyl benzene sulfonate" or that the reference "has a generic disclosure." Careful study of the reference will show (and the Patent Office has never asserted the contrary) that it does not contain the slightest hint of the appellants' discovery, the soil-suspending properties of PVP. All we have in the German patent is disclosure of two detergent-PVP compositions [2] which meet the *language* of the appealed claims. This, to be sure, requires that the reference be somehow disposed of, but the fact it does not disclose the actual invention should not be lost sight of in dealing realistically with the situation.

After the Rule 131 affidavit was filed, the examiner persisted in his rejection on the German patent, saying:

"The affidavit shows the testing of wash solutions prepared from sodium alkyl ($C_{12}$–$C_{18}$) benzene sulfonate, sodium tripolyphosphate and sodium carbonate and polyvinylpyrrolidone in specified amounts. An affidavit showing the reduction to practice of one species, not sufficient by itself to support a genus, does not

2. For some unexplained reason the Patent Office examiner and board relied only on the disclosure of "soap" and PVP in Example 1 of the reference. The solicitor's brief makes the mistaken assumption, which the examiner and the board do not appear to have made, that the reference discloses "sodium alkyl benzene sulfonate," the material of allowed claim 18, and that the Rule 131 affidavit show-

ing use of that detergent overcame that portion of the reference. But, as shown in the quoted portion of Example 2 of the German patent, supra, the "synthetic" detergent of the reference is a sodium salt of a mixture of higher molecular *aliphatic* sulfonic acids, which detergent was not specifically referred to in the affidavit.

overcome the reference for a generic claim, particularly where the species shown in the affidavit is different from that of the reference. Ex parte Fryling 1947 C.D. 5; 75 USPQ 9."

The Board of Appeals adopted the examiner's contention, rejecting appellants' argument that there is no true genus-species relationship here. It held the Fryling decision binding on it and added reference to our opinion in In re Stempel, 241 F.2d 755, 44 CCPA 820, concluding on this issue as follows:

"* * * the reference shows soap and pvp. Since appellants' affidavit does not establish priority with respect to soap and pvp, the rejection of generic claims 12 through 17 as unpatentable over Sattler et al. [the German patent] must be sustained."

We do not agree with the Patent Office position that there are generic and specific inventions here. We feel that this assumption, upon which the Patent Office has built its entire case, is factitious. There was but a single invention or finding out or discovery and that was that PVP was useful as a soil-suspending agent in washing operations. Reading the specification from its title to its end makes this abundantly clear. There is no assertion or suggestion—and the Patent Office makes none either—of any chemical reaction, synergism, or even cooperation between the detergent and PVP, except in the practical sense that the soil loosened by the detergent is kept by the PVP from being redeposited. The detergents are described as "any of the materials commonly used for washing purposes" and it is expressly stated that "the particular detergent used is not critical except that one should be chosen which is generally useful in emulsifying and detergent applications." That, in simple terms, means useful in washing. It seems clear that the detergent, being no part of the real invention, would not even appear in the claims, at least as a positive element, but for the fact that the law prevents the claiming of a "use." Its presence is merely a matter of form

and cannot be taken as converting a single simple invention—the use of a single compound for a single purpose—into a genus and a number of "species."

Since we disagree with the theory that there are numerous species here and "specific" and "generic" claims, we see no applicability of the cases relating to genus and species situations, namely the Fryling, Stempel and similar cases. We have merely claims in which the detergent is set forth with greater or lesser specificity.

When the applicants proved by their Rule 131 affidavit that they had successfully and advantageously used PVP in a washing solution containing a detergent prior to the effective date of the German patent they effectively proved priority of their invention and overcame the reference. We deem it of no legal significance that the reference discloses two detergents which differ from the detergent referred to in the affidavit. Applicants did not invent a combination of PVP with this detergent or that detergent or of PVP with soap. They invented the use of PVP with any detergent and they established that they made the invention before the date of the German patent, the only reference on which their broad claims stand rejected. We are of the opinion, therefore, that those claims are allowable.

We are confirmed in our interpretation of the situation by the manner in which the Patent Office has dealt with another rejection made by the examiner but reversed by the board. We refer to the rejection of the appealed claims for undue breadth in defining the detergent as "an organic surface-active detergent." The specification contains specific examples of the use of PVP only in connection with one detergent, the one named in the affidavit and in claim 18 which is of the anionic type. The examiner said:

"The specification * * * does not disclose specific examples of soaps and non-ionic detergents. The statements in the specification are in general terms only. The disclosure in the specific examples of so-

dium alkyl ($C_{12}$–$C_{18}$) benzene sulfonate as the detergent employed does not warrant the broad language of the claims."

The board reversed, saying:

"* * * the specification discloses *ordinary* soaps and numerous anionic detergents and types of nonionic detergents *which are readily recognized by those skilled in the art*. We will, therefore, not sustain the rejection of claims 12 through 17 as too broad." [Emphasis ours.]

If no more was necessary to support claims reciting the detergent in the broad language objected to than examples using one detergent and the naming of broad classes of detergents *which would be readily recognized by those skilled in the art*, then we are unable to see why the tests shown in the affidavit, which are in substance the examples of the specification, were not also sufficient to show those skilled in the art that the total inventive act had been completed.

We are satisfied that applicants complied with the Rule 131 requirement of "facts showing a completion of the invention in this country * * * before the date of the foreign patent." The affidavit really shows as much as the application except for the textbook recitation of known detergents.

The decision of the board rejecting the claims is reversed.

Reversed.

WORLEY, Chief Judge, with whom KIRKPATRICK, Judge, joins, dissenting.

I agree with the board that the affidavit submitted by appellant is insufficient to show completion of the invention recited in the appealed claims prior to the effective date of the German patent.

The affidavit relates to tests of a washing solution containing 0.12% of Nacconal NRSF, 0.08% of sodium tripolyphosphate, 0.04% of sodium carbonate, and 0.1% carbon black, to which polyvinylpyrrolidone (PVP) was added in amounts varying from 0.001% to 0.1%. The tests involved the washing of cloth samples and showed a progressive increase in washing efficiency from 0.001 to 0.05% of PVP and a slightly lower efficiency at 0.1 than at 0.05 per cent of that material. No other materials were tested and the affidavit does not mention soil suspension.

I am unable to see how those limited tests establish completion of the invention of the appealed claims, which call for the use of PVP with any organic surface-active detergent to minimize redeposition of removed soil. There is nothing whatever in the affidavit to show that appellants contemplated the use of PVP in combination with any detergent other than that actually used in the tests, or that they *even recognized* that PVP was acting as a soil suspension agent rather than as a detergent. So far as the affidavit shows it may have been thought that the improved results were due to some special coaction of PVP with the particular detergent used.

Appellants' application was not in existence when the tests described in the affidavit were made, and the disclosures contained in the application cannot be retroactively read into the tests. If, as seems to be suggested by the majority, appellants, when the tests were made, had the broad idea that PVP would be effective as a soil suspension agent in conjunction with any organic surface-active detergent, it would have been a simple matter for them to have said so in their affidavit. They failed to do so, and the affidavit is silent as to the actual purpose of the tests and as to the conclusions, if any, which were drawn from them. Under such circumstances, I do not think we may properly fill in the gap by speculation favorable to appellants. The affidavit should be taken at its face value and, when so considered, it clearly fails to suggest the invention recited in the appealed claims.

It is to be noted that the German patent disclosing the invention claimed by appellant was published and available to the public six months before appellants'

application was filed. Under such circumstances it seems evident that a very convincing showing by appellant should be necessary to justify granting a patent. Appellants' affidavit simply does not make such a showing.

The issue here is not whether the claimed invention *might* have been obvious to one skilled in the art on the basis of the experiments described in the affidavit. To antedate the reference it is necessary to show actual *completion* of the claimed invention, and not merely a concept which *might* have enabled one skilled in the art to complete it.

I would affirm the decision appealed from.