53 CCPA

**Application of Fritz HOSTETTLER and Eugene F. Cox.**

**Patent Appeal No. 7564.**

United States Court of Customs and Patent Appeals.

Feb. 17, 1966.

Rehearing Denied May 5, 1966.

Charles J. Metz, Francis M. Fazio, New York City, Paul A. Rose, Washington, D. C., Louis C. Smith, New York City, for appellants.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPAT-RICK.*

MARTIN, Judge.

The issue for determination in this appeal[1] from the Board of Appeals is the sufficiency of an affidavit under Rule 131 to remove publications which are conceded to be prior art references under 35 U.S.C. § 102(a).

The invention is evident from the sole claim in the case on appeal here:

4. A process for producing a urethane which comprises reacting (a) a compound having at least one isocyanato group with (b) a compound having at least one alcoholic hydroxyl group, in the presence of a catalytic amount of stannous octoate, wherein the sole reactive groups present in both said compounds are isocyanato and aliphatic alcoholic hydroxyl groups, respectively.

It should be noted that the process claim, in calling for each reactant having "at least one" of the pertinent reactive groups, encompasses the use of alcohols and isocyanates of any "functionality" as reactants to produce compounds having a *single* NHCOO linkage, as well as those having a plurality of such linkages such as *poly*urethane resins and foams.[2] The reaction of the claimed process can be depicted in simplified form by the equation:

$$R^1 - NCO + HO - R^2 \xrightarrow{\text{Stannous Octoate}} R^1 - NH - \overset{\overset{\textstyle O}{\|}}{C} - O - R^2$$

| Isocyanato Group Containing Reactant | Hydroxyl Group Containing Reactant | Urethane Group Containing Product |
|---|---|---|

$R^1$ and $R^2$ represent various organic moieties.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. This appeal PA 7564, is taken on application serial No. 24,650, filed April 26, 1960 for "Tin-Containing Catalyst for Isocyanate Reactions."

2. Functionality in this context thus refers to the reactive or functional groups of the reactants. "Any functionality" means having one or any number of functional groups per reactant molecule.

The references relied on for the § 102 (a) rejection are:

Technical Information Bulletin, No. 28–F9, July 20, 1959 Mobay Chemical Co., Pittsburgh, Penna.

Modern Plastics, Feb. 1960; page 53.

There is no issue as to what those references show since the solicitor agrees that appellants adequately summarize them in their brief thus:

The references * * * disclose the use of stannous octoate as a catalyst in the production of urethane foams which involves the reaction of polyfunctional alcohols with polyfunctional isocyanates to form polyurethanes. Thus, the references disclose the subject claimed invention employing polyfunctional reactants.

The Rule 131 affidavit alleges a completion of the invention prior to May 26, 1958,[3] which is prior to the effective date of the earliest reference. In the affidavit, reference is made to accompanying notebook pages on which was recorded an experiment using stannous octoate to catalyze the reaction of a *mono*functional alcohol (methanol) with a *mono*functional isocyanate (phenyl isocyanate) to produce a urethane containing only one NHCOO—group (methyl N-phenylcarbamate). The subject of the research is stated on the notebook pages to be "Catalytic Studies of the Reaction of Isocyanates with Active Hydrogen Compounds * * *," and the purpose of the particular experiment was "to determine the velocity coefficient for the [above noted] reaction * * using * * * Stannous Octoate * * as catalyst." The affidavit admittedly does not show facts establishing reduction to practice of a process involving use of stannous octoate to produce a polyurethane resin or foam.

The examiner was not satisfied by the affidavit, stating both in the Final Rejection and in the Answer:

* * * Applicants' attention is directed to the premise of M.P.E.P. section 715.03 which states that the rejection is valid unless applicant overcomes the exact species of the reference by his affidavit, or else the affidavit shows an adequate generic disclosure. Applicants have failed to do this since their affidavit covers only one species methanol which is in fact generically different from the reference's species. As a matter of fact, the references all concern the formation of polymers, whereas the affidavit shows the reaction of methanol, a monofunctional compound with monoisocyanate, said reaction being unable to form a polymer. Thus the Stempel case [In re Stempel, 241 F.2d 755, 44 CCPA 820, 113 USPQ 77] is not applicable.

The board in affirming stated:

In essence, the affidavit proves a reduction to practice of the simple monomeric reaction whereby methyl N-phenylcarbamate is produced from phenyl isocyanate and methanol, using stannous octoate as a catalyst. This may have been a useful preliminary or screening experiment raising hopes that the catalyst would be correspondingly useful in the preparation of urethane polymers, but it cannot be regarded as a reduction to practice of that principal aspect of the claimed process which involves the production of polyurethanes, particularly polyurethane foams. The simple monomer experiment is not deemed to be representative of the problems encountered in the preparation of polyurethane foams * * *, and certainly does not demonstrate the

---

3. That date coincides with the filing date of a patent to Ikeda, No. 3,010,923 issued November 28, 1961, which was cited of interest in the prosecution but not relied on in the appeal.

beneficial results mentioned in * * appellants' specification.

Appellants may have carried out the simple reaction of their affidavit prior to the cited publications, but they did not complete the invention of the scope here claimed or the foamed polyurethane aspect taught in the references prior to the date of the references. Chronologically, appellants reacted phenyl isocyanate and methanol in the presence of stannous octoate and obtained methyl N-phenylcarbamate. Thereafter, the cited references were published disclosing the preparation of polyurethane foams using stannous octoate as the catalyst. Finally, the instant application was filed disclosing and claiming all aspects of urethane production using the specified catalyst. The record furnishes no basis for any different conclusion as to the chronological course of events and, clearly, it cannot be held that appellants were first as to all aspects of urethane production using stannous octoate as the catalyst.

We are not impressed by appellants' arguments that the procedure of their affidavit is representative of urethane production in general. The simple monomer reaction may be indicative of possible future utility of stannous octoate in the preparation of polyurethane foams, but the reaction is not so nearly identical that the completion of the simple monomer reaction can be regarded as constituting a completion of the considerably more complex polymer reaction.

The solicitor urges that the above position is particularly correct in view of the generally known unpredictability of catalytic activity, citing: Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610 (1928); In re Doumani, 281 F.2d 215, 47 CCPA 1120; Ex parte Meguerian, 124 USPQ 456 (Pat.Off.Bd.App.1960); Ex parte Fugate, 99 USPQ 54 (Pat.Off. Bd.App.1953).

Thus, the issue, more specifically stated, is whether the factual showings in the Rule 131 affidavit relating the catalysis of a process to produce a compound having a single urethane group is sufficient to antedate a reference under § 102(a) which shows the claimed process as producing polyurethane resins or foams.[4]

■ We think the board erred in its view of what is the invention, and thereby demanded appellants show more in the affidavit than is necessary under Rule 131. Rule 131 requires applicant to make oath to facts showing a completion "of the invention." That requirement does not mean affiant must show a reduction to practice of every embodiment of the invention. Nor is that requirement coextensive with the amount of disclosure necessary to support a claim under 35 U.S.C. § 112.

The invention here is the use of a catalyst in a process involving an old reaction. As appellants state:

* * * But has not the Board lost sight of that which appellants seek to claim, i. e., the use of a new catalyst for an old reaction? The Board emphasizes the functionality of the reactants, and thus whether or not the reactants are polymer-forming. But the Board has ignored the fact that, regardless of

---

4. There is clearly no issue as to whether the specification is adequate to support the claim or that the claim is unduly broad, since the board reversed the examiner on that issue, stating:

In our view, the nature of appellants' disclosure and the state of the prior art in the present case does not require that the known reactants be defined with greater particularity. We will not sustain the rejection of the appealed claim under 35 U.S.C. 112.

See In re Fong, 288 F.2d 932, 48 CCPA 897, 903.

functionality, alcohol plus isocyanate produces urethane, and it is the use of stannous octoate to catalyze this urethane-forming reaction that appellants seek to claim. The invention is predicated upon catalytic activity alone. The Rule 131 Affidavit * * * shows such catalytic activity thereby overcoming references whose sole *pertinent* disclosure is the same catalytic activity.

The apparent requirement of the Patent Office that appellants show production of other *products,* polyurethane resins or foams, is considered improper in view of the nature of the invention. See In re Fong, 288 F.2d 932, 48 CCPA 897, 902. As evidence that alcohols of any functionality can be reacted with isocyanates of any functionality, appellants rely on a patent to Rothrock, No. 2,374,136 issued April 17, 1945,[5] which states in pertinent part:

> * * * ·When the active hydrogen-containing substances [sic] is monomeric and contains only one active hydrogen-containing group, the product is in general monomeric. On the other hand, if both of the reactants are bifunctional, the product is polymeric; and, if one of the reactants is polymeric, the product is a modified polymer of higher molecular weight. * * *

The examiner's response, referred to by the board, was:

> * * * Applicants cite Example I [in Rothrock] as a "model reaction" similar to applicants', in that the effectiveness of the catalyst is established, without the formation of the polymer, by the reactants. Applicants have apparently closed their eyes to the other specific examples, wherein the results of using

or not using the catalysts are disclosed, not with methanol and a diisocyanate, but with a diisocyanate and a bifunctional high polymer forming polyhydroxyl containing compound.

Clearly, while there is a difference shown in that patent between "using or not using the catalysts * * *," as the examiner stated, the other specific examples support the position of appellants: that a catalyst for the monofunctional reactants also catalyzes the reaction between polyfunctional reactants. We think that is the gist of the teaching of Rothrock with regard to catalysis.

■ It is clear on this record that one of ordinary skill in this art would consider that functionality of the reactants determines whether the products are "monomeric"[6] or polymeric, but not that functionality would matter insofar as the reaction using the catalyst is concerned. The statement as to unpredictability of catalytic activity, while relevant, is so general as to afford little assistance in the determination of the precise issue before us. In fact, the more specific showings in the affidavit and the Rothrock patent indicate that one of ordinary skill in this art would expect that a catalyst for the particular functional groups involved in the reaction would operate relatively independently of the number of those groups on the reactant molecule. Thus we conclude that one of ordinary skill in the art would be satisfied from the facts shown in the affidavit that appellants had completed *the invention* as defined in the claims. See In re Fong, supra. Certainly appellants should not be required to submit facts under Rule 131 showing that they reduced to practice

---

5. While this patent was cited during the prosecution but not relied on for the rejection, the state of the prior art is not restricted to the documents relied on by the Patent Office. They must, however, be produced before the Patent Office. In re Cofer, 354 F.2d 664, 53 CCPA —.

6. By "monomeric" we mean a product containing only one NHCOO—or urethane group, and do not use the word in its technically more narrow sense as applied to a vinyl group-containing compound in addition polymerization.

that which is obvious in addition to those facts offered as showing a completion of the invention, for the purposes of antedating a reference.

For the foregoing reasons the decision of the board is reversed.

Reversed.