55 CCPA

**Application of William C. RAINER, Joseph H. Hitov, Edward M. Redding, Arthur W. Sloan and William D. Stewart.**

**Patent Appeal No. 7825.**

United States Court of Customs and Patent Appeals.
Jan. 25, 1968.

Alvin Guttag, Cushman, Darby & Cushman, Washington, D. C. (C. Edward Parker, Cambridge, Mass., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals,[1] affirming the rejection of claims 20–21 and 23–25 in application serial No. 694,-662, filed November 5, 1957, entitled "Polyethylene." Claims 1–8, 10–13, 15–19, 22, 26–28 have been allowed.

The invention includes certain polyethylenes and their methods of preparation. The following are the independent claims on appeal:

20. An irradiated foamed polyethylene, the irradiation having been carried out with high energy ionizing irradiation to an extent of at least about $2 \times 10^6$ REP.

21. A process comprising irradiating a foamed polyethylene with an irradiating dosage of high energy ionizing irradiation of $2 \times 10^6$ to $100 \times 10^6$ REP.

23. A process comprising crosslinking polyethylene by the use of both high energy ionizing irradiation at a dosage of between 2 and $200 \times 10^6$ REP and a free radical polymerization catalyst.

Claims 24 and 25 are dependent on claim 23 and define the irradiation more specifically, claim 24 specifying radiation of "at least about 750,000 electron volts" and claim 25 that radiation is carried out with electrons.

The references relied on are:

Gaylord 2,907,675 October 6, 1959
Rubens et al. 2,948,665 August 9, 1960

Gaylord discloses a process of subjecting polyethylene to high energy particles, in an atmosphere of a free radical engendering compound, to prepare the polyethylene to be coated by an ethylenically unsaturated monomer which is polymerized *in situ*. Typical free radical engendering compounds disclosed by Gaylord are benzoyl peroxide, azo-bis-isobutyronitrile, tetraphenylsuccinonitrile, and N-nitrosoacylanilides.

1. Consisting of Federico and Rosa, Examiners-in-Chief and Stone, Acting Examiner-in-Chief. Examiner-in-Chief Rosa wrote the opinion.

Rubens et al. discloses a process in which a foaming agent is uniformly dispersed through molten polyethylene, the mixture is fed past a source of ionizing radiation, and then extruded into a zone of sufficiently lower pressure to cause expansion of the polymer with resultant formation of a shaped body of cellular construction with good stability and resiliency.

Claims 20 and 21 were rejected by the examiner as obvious in view of Gaylord and Rubens. "[T]he irradiation of 'foamed' polyethylene * * * is known to the prior art as is evidenced by Rubens et al."

Claims 23–25 were rejected by the examiner as "met by Gaylord."

Appellants argued before the board that they had overcome the cited references by a series of affidavits[2] and exhibits. The inventors' affidavits allegedly show that they successfully prepared transparent polyethylene by the method of the invention before the effective dates of the references. They used four different free radical engendering catalysts: methyl ethyl ketone peroxide, benzoyl peroxide, azo-bis-isobutyronitrile, and polynitroso dimethyl terephthalate. Their attorney's supplemental affidavit shows that a draft application, similar to that on appeal, had been prepared before the effective dates of the references, after a conference between the inventors and their attorney, containing the following:

It has now been found that these objects can be attained and transparent substantially colorless, i. e., water-white, solid polyethylene can be prepared in a form which can be reproduced, regardless of the subsequent physical change of the polyethylene, by treating polyethylene with a free radical engendering substance and also irradiating the polymer. The irradiation treatment can be carried out before, simultaneously with, or subsequent to the treatment with the free radical engendering material. * * * * * * * * * *

WE CLAIM:

1. A process comprising cross-linking polyethylene by the use of both irradiation and a free radical engendering substance.

The board did not feel that the affidavits sufficed to overcome the references. It said:

Since appellants' affidavits and exhibits show the use of only three free radical polymerization catalysts, i. e., methyl ethyl ketone peroxide, benzoyl peroxide, and azo-bis-isobutyronitrile in the claimed cross-linking process, and do not antedate the N-nitroso-acylanilides and tetraphenylsuccinonitrile catalysts * * * of Gaylord, this patent is still available as a reference for broad claims 23, 24 and 25.

The board also sustained the rejection of claims 20 and 21 which, as may be seen above, contain no catalyst limitation at all, explaining:

These claims are not limited to the use of the disclosed free radical polymerization catalysts in the production of irradiated polyethylene foam. Consequently, appellants' Rule 131 affidavits and the exhibits do not overcome the rejection of these claims based on the Gaylord patent which shows that it is old to irradiate polyethylene and the Rubens et al. patent which discloses irradiated polyethylene foam.

Appellants' basic argument is that the draft application proves their "possession" of the generic invention and the experiments with four different free radical engendering agents establish their "completion" of it before the effective dates of the references.

It is settled, of course, that an anticipatory disclosure, not a statutory bar, may be removed as a reference against a generic claim by a Rule 131 affidavit

---

2. Affidavits of the inventors were filed under Rule 131 of the Patent Office Rules of Practice. A "supplemental" affidavit by their attorney was also filed.

showing prior reduction to practice of as much of the claimed invention as the reference shows. In re Stempel, 241 F.2d 755, 44 CCPA 820 (1957). (See further explanation of *Stempel* in In re Tanczyn, 347 F.2d 832, 52 CCPA 1630.) The Patent Office Board of Appeals, in that case, had held such a showing insufficient, requiring, rather, proof of prior "possession of the *generic* invention." We held that this involved too literal a reading of Rule 131[3] and that "all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show." And this priority need not always be shown directly. When that species of the generic invention which has been completed prior to the effective date of the reference would make obvious to one of ordinary skill in the art the species disclosed in the reference, the reference may be said to have been "indirectly antedated." In re Clarke, 356 F.2d 987, 53 CCPA 954 (1966); 34 G.W.L.Rev. 507, 525 (1966).

Appellants do not, however, assert that they have shown a reduction to practice of as much of the generic invention as is shown in the references. They do not argue, with respect to claims 23–25, that they have reduced to practice the invention using, as free-radical engendering agents, the tetraphenylsuccinonitrile and N-nitrosoacylanilides of Gaylord. Nor, in fact, do they urge that their experiments would have made obvious use of the free radical engendering agents of Gaylord.[4] Appellants, rather, rely on their proofs to show that they completed and had "possession" of the *generic* invention before the effective date of the references. See MPEP § 715.03.

A showing of a prior reduction to practice of every embodiment of the invention is, of course, not required. In re Hostettler, 356 F.2d 562, 53 CCPA 1069 (1966). On the other hand, mere prior conception will not suffice. In re Clarke, supra. The question is whether the species which have been reduced to practice suffice to provide a basis for a reasonable inference of possession of the generic invention. We do not believe that appellants have shown the reasonableness of the inference in this case.

They assert only that they had a realization of the generic invention and used free radical engendering agents which "vary widely in their chemical structure." Appellants have made no attempt to show that generic applicability would be a reasonable inference from their experiments of record.

Accordingly we agree with the board that appellants' affidavits do not show prior "possession" of the broad inventions of claims 23–25.

Likewise, we agree with the board that appellants have not shown prior possession of the even broader inventions of claims 20 and 21. Nor have they shown that their work with certain of the free radical engendering agents made obvious the broad inventions of claims 20 and 21, prior to the dates of the references. These claims, to product and process respectively, are to ir-

---

3. Rule 131(a) reads:
   131. *Affidavit of prior invention to overcome cited patent or publication.* (a) When any claim of an application is rejected on reference to a domestic patent which substantially shows or describes but does not claim the rejected invention, or on reference to a foreign patent or to a printed publication, and the applicant shall make oath to facts showing a completion of the invention in this country before the filing date of the application on which the domestic patent issued, or before the date of the foreign patent, or before the date of the printed publication, then the patent or publication cited shall not bar the grant of a patent to the applicant, unless the date of such patent or printed publication be more than one year prior to the date on which the application was filed in this country.

4. They find it unnecessary, therefore, to introduce evidence of the interchangeability of free radical engendering agents in work of this sort.

radiated *foamed* polyethylene, irradiated to the degree or within the range stated.

Appellants rely heavily on this passage from the draft application:

### EXAMPLE VIII

A foamed sheet from 10 parts polyethylene and 0.5 parts azo-bis-(isobutyronitrile) was irradiated with the apparatus described in Example I at room temperature to give a foamed product of considerably increased toughness and tear strength.

### EXAMPLE IX

Example VIII was repeated with a foamed polyethylene made from 10 parts of the polyethylene and 0.5 parts of BL–353 (polynitrosodimethyl terephthalate) and the results were similar to those in Example VIII.

The draft specification, like the one at bar, then includes this broadening statement:

By irradiation, it is thus possible to increase the strength of foamed polyethylene. The foamed polyethylene employed can be prepared with the aid of any conventional foaming agent, e. g., carbon dioxide, sodium bicarbonate, diazoaminobenzene, etc. rather than the specific foaming agents recited in Examples VIII and IX.

Were *conception* of the broad invention of claims 20 and 21 sufficient for "completion," we suppose this would suffice. Conception, of course, is not enough. We see no indication at all that the experiments referred to in Examples VIII and IX of the draft would serve to define the genus "foaming agents," including all of the "conventional" agents encompassed by claims 20 and 21. We cannot assume that one would infer the effectiveness of all foaming agents from the experiments reported. Interchangeability among the catalytic and inert foaming agents, for example, *at the time of appellants' experimental work,* seems

to have been rejected by appellants themselves in arguing (successfully) in the Patent Office against the rejection of their *specific* claims:

It should be noted that the Rubens foaming agents are inert whereas the azo compounds of claims 22 and 28 [allowed by the board[5]] decompose. *It would be impossible to predict what would happen to such materials during the irradiation technique.* Apparently, however, some of the foaming agent is left over since it aids in reducing the amount of irradiation required to obtain identical cross-linking. [Emphasis ours.]

Appellants make a separate argument here for appealed claim 20 alone:

\* \* \* claim 20 is a product claim and it is submitted that as the Board has conceded that appellants have made a foamed product prior to the effective dates of the references that they are entitled to claim 20. It is not necessary that appellants show that they made the product of claim 20 by more than one process prior to the effective date of the references. Actually appellants have proven that they made the foamed product of claim 20 by two methods (a) using azo bis (isobutyronitrile) plus irradiation and (b) using polynitrosodimethyl terephthalate plus irradiation prior to the references \* \* \*.

The difficulty with this contention is in its tacit assumption that all irradiated foamed polyethylene is alike—the circumstance under which the preparation of it by any method would suffice. We take it from appellants' specification that there is a clear distinction between the product obtained when a free radical engendering foaming agent is used and that obtained when an inert foaming agent is used. The first polyethylene is not the second, nor does it make the second obvious, yet both are encompassed by the broad product claim.

---

5.  Claims 22 and 28 depend from claim 21 on appeal and specify azo-bis-(isobutyronitrile) and "an azo compound," respectively as the foaming agent, thus narrowing the parent process claim to include such agent.

It must not be forgotten what the issue before us is. It is not the obviousness of the claimed subject matter in view of the references. Appellants do not even argue that question and we can assume obviousness, as they appear to do. The issue is whether appellants have *overcome* the references by their proofs under Rule 131—or perhaps whether they *can* do so under the rule in view of what the references, particularly Rubens et al., *claim* and the express prohibition in Rule 131 against attempting to antedate what is claimed. It is our conclusion that the board was correct in ruling that the limited proofs have not overcome the references with respect to broad claims 20 and 21. Claims already allowed appellants, restricted to what they have shown they did prior to Rubens' effective date, are commensurate with their evidence. They have not shown that their prior invention is commensurate with claims 20 and 21 and inclusive of all the references show. See Ex parte McMaster, 131 USPQ 475, 773 O.G. 323, 1961 C.D. 64 (P.O.Bd.App.).

The decision of the board is affirmed.

Affirmed.

SMITH, J., concurs in the result.