55 CCPA

**Application of Ettore DaFANO.**
**Patent Appeal No. 7927.**

United States Court of Customs and Patent Appeals.

April 4, 1968.

Rehearing Denied June 20, 1968.

Lyon & Lyon, Los Angeles, Cal., (James W. Geriak, Los Angeles, Cal., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection of claims 26–31 and 33 of appellant's application entitled "Resin Composition." [1]

The invention relates to the incorporation of resin soluble organic copper salts in certain catalyzed polyester resin compositions, which is said to increase the rate of gelation of composition and to reduce the peak exotherm. These effects are of particular significance in producing thick cast sheets of transparent polyester free from optical distortion.

The invention is adequately described in claim 26 reproduced below:

26. A new composition of matter comprising (A) a polyester of a dihydric alcohol and an ethylenically unsaturated dicarboxylic acid, (B) a compound having a polymerizable $CH_2{=}C{<}$ group, (C) a gelation inhibitor selected from the group consisting of quaternary ammonium salts of non-oxidizing acids at least as strong as acetic acid and tertiary amine salts, selected from the group consisting of the hydrochlorides, hydrobromides and hydroiodides, (D) a peroxide polymerization catalyst and (E) a minor effective proportion of a copper salt of an organic acid sufficient to provide at least about 0.008 part per million of copper, based upon the weight of (A) and (B), in solution in (A) and (B).

The references relied upon by the examiner are:

| Parker | 2,740,765 | April 3, 1956 |
| Duhnkrack | 2,822,344 | February 4, 1958 |

---

1. Serial No. 501,727 filed April 5, 1955.

Appellant states in his brief that the sole novel feature of the invention is the use of copper, and he concedes that all else embodied in the claims was well known prior to the time when the invention was made. Appellant also conceded during oral argument that the appealed claims are unpatentable if the Duhnkrack patent is available as a reference.

The question before us, therefore, is whether an affidavit filed under Rule 131 during prosecution is adequate to remove the Duhnkrack patent as a reference.

Duhnkrack discloses that the polymerization of ethylenically unsaturated polyester resin-vinylidene monomer compositions may be promoted by the use of a combination of a compound containing an imino group (which may be a tertiary amine salt), a copper salt and a peroxide catalyst. As suitable copper salts, Duhnkrack lists 13 salts including several salts of organic acids.

Appellant filed an affidavit accompanied by exhibits of (1) laboratory notebook pages showing a reduction to practice of the invention insofar as it concerned copper naphthenate and quarternary ammonium salts, and (2) two memoranda making disclosure of his invention, duly witnessed.

The first memorandum sets forth the discovery of copper as a reaction accelerator. The following paragraph of the disclosure is pertinent to the issues here:

I have conducted a systematic study on the action of resin-soluble compounds of various metals and have discovered that copper compounds have an action which for intensity and selectivity greatly surpasses that of any other substance known to the art. I have used copper naphthenate containing 8% Cu, but other resin-soluble copper compounds can be used; *more important than the nature of the compound is the amount of soluble copper introduced.* As little as one part copper on fifty million parts polyester resin has a very noticeable effect. The correct amount will depend on the reactivity of the resin and on the purpose. Although there is no critical upper limit for the amount to be added, I do not believe that more than one part on a million will ever be necessary. [Emphasis added.]

The second memorandum refers to the first, and states:

Since that time, a great deal of research and development work was done on the subject, and a great deal of practical experience was acquired that shows that the use of copper in amounts ranging from .5 to 1.5 parts per million presents advantages which were not established then. * * *

These advantages were stated to be:

1. If copper (in form of a resin soluble compound) is added to a polyester-styrene casting compound in the above stated proportions, prior to the addition of a peroxide catalyst, and if the cast sheet is removed from the mold after an adequate pre-cure, its surface is entirely free from blemishes, such as indentations and pimples, the inside of the material thus treated is free from "refractive enclosures" which are very common without the use of copper.

2. Copper, used in the stated proportions in connection with a peroxide catalyst, causes a reduction of gel time, but also substantially lowers the peak of exotherm, because the heat of reaction is released gradually. * * *

3. For essentially the same reason, by using copper in the stated proportions, temperature control of the resin during the catalyzing and casting operations, becomes less important, and so does that of the mold. * * *

4. For the same reason, the effect of variations in the reactivity of various production batches of resin is minimized if copper is added in the specified amount. * * *

The portions of the second memorandum quoted above are the only ones which mention copper at all. Copper naphthenate is not specifically mention-

ed, and a fair reading of the memorandum indicates that the writer had resin-soluble copper compounds broadly in contemplation wherever he mentioned copper.

The board was satisfied that the affidavit and exhibits were adequate to antedate the Duhnkrack reference as to those claims which are limited to copper naphthenate and quarternary ammonium salts.

However, the board did not feel that the affidavit and exhibits were adequate to antedate Duhnkrack as to those claims which recite copper salts of organic acids. The board stated:

> Duhnkrack exemplifies copper salts of seven organic acids and thus establishes the generic concept of organic copper salts. The exemplification of only one organic copper salt in the Rule 131 affidavit is not sufficient to establish reduction to practice of this generic concept even though broad language as to copper compounds was used. In our opinion the action of all organic copper salts in controlling the exotherm cannot be predicted from one experiment.

Furthermore, the board did not feel that the affidavit and exhibits were adequate to antedate Duhnkrack as to those claims which recite tertiary amine salts as gelation inhibitors. Appellant had contended that tertiary amine salts were old gelation inhibitors and equivalent to quarternary ammonium salts, and had supported this position by citation of a prior art reference teaching the equivalency of the two. The board was unimpressed by this argument, stating:

> It is well settled that all the claimed elements of a composition must be shown to constitute a reduction to practice. The failure to include one essential element cannot be supple-

mented by reference to teachings of equivalency in the prior art.

In view of these two separate grounds for refusal of the affidavit, we are faced with two inquiries: (1) Whether a reduction to practice of the copper naphthenate species, coupled with evidence that the inventor considered his invention to be a generic one, is adequate to remove a reference disclosing the genus, and (2) whether prior art teachings of equivalency may be relied upon for indirect antedating of a species disclosed in a reference.

As regards the reduction to practice of the copper compounds, appellant first presents the argument that the discussion of genus and species is totally out of place in this case. He contends that his invention resides solely and exclusively in the *use of copper* in resin systems; that the nature of the anionic portion of the copper molecule is a matter of complete indifference in the practice of his invention so long as the molecule is resin soluble; that he is prevented from claiming the use of copper only by the technical restrictions of the statute; and that the use of copper is a single invention not divisible into genus and species. It is the position of appellant that, on these facts, the decision of this court in In re Fong, 288 F.2d 932, 48 CCPA 897, demands acceptance of the affidavit.

The invention in *Fong* was the use of a new soil-suspending agent, polyvinyl-pyrrolidone (PVP), in combination with various soap and detergent compounds. The genus-species question in that case arose not in connection with the PVP but rather in connection with the detergents with which this new soil-suspending agent could be used. There was in the Fong application the discovery of a single compound[2] for a single purpose in washing operations, and we held that the recitation of various detergent environments to which this discovery could

2. The term "single compound" is not precisely correct, for the specification in *Fong* disclosed suitable PVP as having an average molecular weight of 15,000 to 40,000. No contention was made in that case that this range of molecular weights encompassed compounds so diverse in properties that they might represent separate species.

be applied did not convert the single discovery into a number of species.

■ The present case is easily distinguishable in this respect, for the question of genus and species arises here not in connection with the environment in which appellant's invention is practiced, but rather in connection with the discovery itself. Appellant has discovered that copper in the form of its various compounds has certain effects on polymerization. There are many copper compounds which have been discovered to be operable in this invention; there was but a single compound discovered to be operable in *Fong*. We do not feel that *Fong* has application where the discovery resides in the use of a family of compounds, as opposed to the use of a single compound in a variety of environments. In this case there is a genus composed of a number of species of resin-soluble copper compounds, and the invention described in this application is their use in modifying the curing characteristics of polyester resin compositions. Appellant's reliance on *Fong* is therefore misplaced.

Appellant also relies upon In re Clarke, 356 F.2d 987, 53 CCPA 954, arguing that the affidavit makes it clear that appellant recognized that his invention was not limited to any particular salt, but was applicable to a broad range of copper compounds. In *Clarke*, we considered the problem of a species reduction to practice in a Rule 131 affidavit being used to overcome a reference which disclosed a different species. We set forth, as a test for the adequacy of the affidavit, a standard of whether the showing would convince one of ordinary skill in the art to a reasonable certainty that the applicant possessed so much of the invention as to encompass the reference disclosure. We felt then, as we do now, that the number of independent species actually reduced to practice, while certainly relevant as indicating the breadth ascribed to the invention by the inventor, is not necessarily determinative. We indicated in *Clarke* that in an appropriate case a single species could be sufficient

to antedate indirectly. *A fortiori*, a single species could be sufficient to antedate a genus.

In *Clarke*, we felt that the appellant had failed to show that he ascribed to his invention any broader scope than that represented in his actual reduction to practice. We stated:

> While other members of the alkyl series, or even the branched-chain alkyl series, might be said to be structurally evident or prima facie obvious to one skilled in the art upon preparation of the methyl species, the evidence is *inadequate* to show that appellant considered any other members of those series to be part of the invention. * * *

■ The affidavit in this case differs from that in *Clarke* in that it shows that appellant did have an appreciation of the fact that resin-soluble copper compounds broadly would yield the desired results. The two memoranda are explicit on this point. Mere prior conception of the genus will not suffice, however, as was pointed out in *Clarke*. It is necessary that the species which were reduced to practice provide an adequate basis for inferring that the invention has generic applicability. In re Rainer, 390 F.2d 771, 55 CCPA ——.

■ It is clear from the record that the inventor, attributing the novel properties of the copper naphthenate solely to the presence of copper ion in the resin, inferred that other resin-soluble copper salts would behave similarly. We find nothing in this record to indicate that this inference was unreasonable, and subsequent developments appear to indicate that it was in fact well founded. This appears to be a situation where a single species reduction to practice is adequate to overcome a reference showing of a genus. We, therefore, feel that the board was incorrect in denying effect to the affidavit in regard to the copper compounds.

We turn now to the question of whether appellant may rely upon prior art teachings of equivalency in order to in-

directly antedate a gelation agent which is admittedly not mentioned in his Rule 131 affidavit.

Appellant's basic argument on this point is that these gelation inhibitors are both well known in the prior art and form no part of his invention, which is the use of copper. He thus takes the position that In re Fong, supra, is controlling, likening the gelation inhibitors of this case to the detergents in *Fong*, and the copper salts to the PVP. Thus, according to appellant's theory, the gelation inhibitors are merely the environment in which his invention may be practiced.

On this point also we feel that appellant has misapplied *Fong*. We explicitly noted in *Fong* that there was no assertion or suggestion of any chemical reaction, synergism or even cooperation between the detergent and the PVP. The discovery in that case was that PVP was a good soil-suspending agent, and its operation was totally independent of the presence of a detergent.

This case is not similar to *Fong* because there is no showing here that the copper compounds act independently of the other materials in the composition. The evidence before us, in fact, is to the contrary. Appellant's specification states that the beneficial effects of the copper salts "occur to best advantage" only when using these two classes of gelation inhibitors rather than certain other prior art gelation agents specifically mentioned.

■■ This merely serves to demonstrate the reason for our emphasis on the lack of interaction between the PVP and the detergent in the *Fong* case. Two detergents which were equivalent in the absence of PVP would remain equivalent in its presence for they were unaffected by the PVP. If, however, the detergents had interacted with the PVP, the degree of interaction would depend upon the character of the detergent, and they would not be equivalent to each other in the presence of PVP. An applicant who wishes to rely upon a prior art teaching of equivalency of two compounds must demonstrate that the equivalency is not destroyed by the practice of his invention. The mere fact that tertiary amine salts and quarternary ammonium salts are equivalent gelation agents in the absence of copper does not mean that they are necessarily equivalent in its presence. And appellant has not shown that he had established their equivalency before Duhnkrack became available.

■ Nor is In re Clarke, supra, of any aid to appellant. There is nothing in the affidavit to indicate that the inventor considered all gelation agents, or these two specifically, to be equivalent in the presence of copper. Nor is there anything in the affidavit which might persuade one of ordinary skill in the art that the inventor possessed the tertiary amine salts of the Duhnkrack reference. We do not feel appellant has successfully antedated Duhnkrack on this point.

In view of our decision, we reverse the board as to claims 28 and 29 which are limited to quarternary ammonium salt gelation inhibitors, and affirm as to claims 26, 27, 30, 31, and 33.

The decision of the board is modified. Modified.

SMITH, Judge (concurring).

For my views of a board consisting of two Acting Examiners-in-Chief, such as appears in this record, see In re Wiechart, 370 F.2d 927, 54 CCPA 957 (1967). Other than expressing my reservations concerning the legality of such a board, I concur in the opinion of the majority.