57 CCPA

**Application of Edward N. WALSH and Herbert H. ROYSE.**

**Patent Appeal No. 8272.**

United States Court of Customs and Patent Appeals.

April 30, 1970.

Wayne C. Jaeschke, Dobbs Ferry, N. Y., attorney of record, for appellants.

Joseph Schimmel, Washington, D.C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claim 1 of application serial No. 328,463, filed December 6, 1963, entitled "Methoxy-Substituted Cyanophenyl Ester Derivatives of Phos-

---

ing from its use, society may well have been precluded from having this wonder drug available.

**1106**

phorus Acids." Four specific claims are allowed. We reverse.

The single claim on appeal, a compound claim directed to a genus of methoxy-cyanophenyl ester derivatives of various phosphorus-containing acids, reads as follows:

1. A compound having the formula:

[A1651]

where R and R' are members selected from the group consisting of lower alkyl, chloro-substituted lower alkyl, lower alkoxy, phenyl, and phenoxy; and X is a member selected from the group consisting of oxygen and sulfur.

The skew lines emanating from the benzene ring and connecting the –CN ("cyano") and –OCH₃ ("methoxy") radicals are accepted chemical shorthand indicating that these substituents may take any relative position of isomerization. The application indicates that the compounds are useful as pest-control agents for "lower forms of life customarily controlled by chemical means."

The sole reference relied on is:

Belgian patent (Lorenz) 627,817 July 31, 1963.

Claim 1 was rejected by the examiner under 35 U.S.C. § 102(a) "as being anticipated by the Belgium patent to Lorenz which discloses *2–methoxy–6–cyanophenyl* esters which are within the *methoxy-cyanophenyl* genus of the instantly claimed phosphorus acid esters" (emphasis quoted). Lorenz discloses no utility for the 2–methoxy–6–cyanophenyl esters.[1]

Appellants do not dispute that the Belgian patent discloses compounds within the scope of the rejected claim. Rather, they contend that two Rule 131 affidavits which they have filed show "completion of the invention defined by claim 1" or at least show possession of "so much of the invention as to encompass the reference disclosure" prior to the effective date of Lorenz. The first affidavit shows that appellants reduced to practice four compounds within the scope of the rejected claim. Each of the four compounds is a 2–methoxy–4–cyanophenyl ester of a phosphorus-containing acid. Esters of phosphoric, phosphonic, and thiophosphonic acids are represented. On the basis of this affidavit the examiner allowed claims to species for which prior reductions to practice had been shown.

The parties seem to agree that insofar as the issue in this appeal is concerned only substituents on the benzene ring need be considered. Thus, Lorenz can be treated as disclosing a single 2–methoxy–6–cyanophenyl ester, appellants as having reduced to practice a single 2–methoxy–4–cyanophenyl ester, and claim 1 as being directed to a genus of meth-

---

1. The board stated that Lorenz does disclose a utility for the compounds, but the solicitor tacitly concedes that this was error.

oxy–cyanophenyl esters differing only in the positioning of the methoxy and cyano groups on the benzene ring.

The second affidavit reads in relevant part as follows:

We, Edward N. Walsh and Herbert H. Royse, being duly sworn, depose and say:

That prior to July, 1963, we conceived in the United States the invention in its generic nature as evidenced by the reproduced invention disclosure attached hereto.

That prior to July, 1963, as seen in the reproduced invention disclosure the generic nature of the invention is defined as

"Compounds of the type

[A1652]

$R_1$ and $R_2$ = alkyl, alkoxy, dialkylamide, aryl, haloalkyl, haloaryl. ["]

Similarly, the utility is ascribed as effective as pesticides.

The document attached to this affidavit is a form entitled "Invention Disclosure." Following each of five captions ("Date," "Submitted by:," "Subject:," "Nature of Invention:," and "Utility:") space is provided for the appropriate information. The date has been blocked out as is customary under Rule 131 practice. The information, which is handwritten, indicates that the disclosure was submitted by "Edward N. Walsh," one of the appellants. The subject was "Organophosphorus Compounds—Pesticides," the nature of the invention is as quoted in the second affidavit, and the utility caption is followed by the statement "Effective as pesticides."

Summing up to this point, appellants claim a genus of methoxy-cyanophenyl esters without restriction on the positioning of the methoxy and cyano groups. Lorenz discloses a 2–methoxy–6–cyanophenyl ester encompassed by appellants' claim. And prior to the effective date of Lorenz, appellants reduced to practice a 2–methoxy–4–cyanophenyl ester and conceived of their invention as being a genus of methoxy-cyanophenyl esters (and a utility therefor) which encompasses the compound which they had then reduced to practice and the compound which was subsequently to be disclosed by Lorenz. We are thus presented with a question of "indirect antedation" as that concept is developed in In re Da Fano, 55 CCPA 1134, 392 F.2d 280 (1968); In re Rainer, 55 CCPA 853, 390 F.2d 771 (1968); and In re Clarke, 53 CCPA 954, 356 F.2d 987 (1966). The solicitor contends that this case is most nearly like *Clarke*, while appellants contend that it is most nearly like *Da Fano*. In *Da Fano*, the differences between the two cases were explained as follows (emphasis quoted):

In *Clarke*, we considered the problem of a species reduction to practice in a Rule 131 affidavit being used to overcome a reference which disclosed a different species. We set forth, as a test for the adequacy of the affidavit, a standard of whether the showing would convince one of ordinary skill in the art to a reasonable certainty that the applicant possessed so much of the invention as to encompass the reference disclosure. We felt then, as we do now, that the number of independent species actually reduced to practice, while certainly relevant as indicating the breadth ascribed to the invention by the inventor, is not necessarily determinative. We indicated in *Clarke* that in an appropriate case a single species could be sufficient to antedate indirectly. *A fortiori*, a single species could be sufficient to antedate a genus.

In *Clarke*, we felt that the appellant had failed to show that he ascribed to his invention any broader scope

than that represented in his actual reduction to practice. We stated:

> "While other members of the alkyl series, or even the branched-chain alkyl series, might be said to be structurally evident or prima facie obvious to one skilled in the art upon preparation of the methyl species, the evidence is *inadequate* to show that appellant considered any other members of those series to be part of the invention. * * *"

The affidavit in this case differs from that in *Clarke* in that it shows that appellant did have an appreciation of the fact that resin-soluble copper compounds broadly would yield the desired results. The two memoranda are explicit on this point. Mere prior conception of the genus will not suffice, however, as was pointed out in *Clarke*. It is necessary that the species which were reduced to practice provide an adequate basis for inferring that the invention has generic applicability. *In re Rainer* * * *.

It is clear from the record that the inventor, attributing the novel properties of the copper naphthenate solely to the presence of copper ion in the resin, inferred that other resin-soluble copper salts would behave similarly. We find nothing in this record to indicate that this inference was unreasonable, and subsequent developments appear to indicate that it was in fact well founded. This appears to be a situation where a single species reduction to practice is adequate to overcome a reference showing of a genus.

Here it is clear that appellants considered their invention to be a generic one; we thus have a *Da Fano* rather than *Clarke* situation and the inquiry we are left with is whether the single species reduced to practice by appellants provided a reasonable basis for inferring that the position isomers of that species would also be useful as pesticides.

As in *Da Fano,* we "find nothing in this record to indicate that this inference was unreasonable, and subsequent developments appear to indicate that it was in fact well founded."

The decision of the board is accordingly reversed.

Reversed.