53 CCPA

**Application of Robert L. CLARKE.**
**Patent Appeal No. 7489.**

United States Court of Customs
and Patent Appeals.
March 10, 1966.

988

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

The issue in this appeal from the Board of Appeals is whether Rule 131 affidavits that show certain facts about species of a claimed genus, and that also allege conception of the genus, are sufficient to antedate indirectly a reference disclosing a different species within the claimed genus. This issue arises with respect to generic claims 1 and 2 in appellant's application serial No. 836,911, filed August 31, 1959, for "1,2-Diacylhexahydropyridazines and Preparation Thereof."

The claims read:

1. 1,2-Diacylhexahydropyridazine in which each acyl is -CO-R wherein R is a member of the group consisting of hydrogen and a hydrocarbon radical having from one to nine carbon atoms.

2. 1,2-Bis (lower-alkanoyl) hexahydropyridazine.

The hexahydropyridazines are a type of bis-amides which are disclosed as having antiviral and diuretic activity with low toxicity in mammals. Structurally, the compounds may be represented thus:

$$\begin{array}{c} CH_2 \\ CH_2 \\ CH_2 \\ CH_2 \end{array} \quad \begin{array}{c} N - \overset{\overset{O}{\|}}{C} - R \\ | \\ N - \overset{\underset{\|}{O}}{C} - R \end{array}$$

Claim 1: R=H or 1–9 carbon "hydrocarbon" radical.

Claim 2: R= lower alkyl.

The definition of R as "hydrocarbon" is disclosed in the application as:

\* \* \* In the above general formula \* \* \*, when the R's represent separate radicals, they are preferably identical. When R represents a hydrocarbon radical, it preferably stands for an aliphatic hydrocarbon radical, either saturated or unsaturated, straight or branched; a cycloalkyl radical; a monocarbocyclic aromatic hydrocarbon radical; or a combination of the foregoing radicals. Thus, included in the definition of R are alkyl, for example, methyl, ethyl, propyl, *isopropyl*, butyl, tertiary-butyl, hexyl, octyl and nonyl; alkenyl, for example, vinyl, 1-propenyl, allyl, 3-hexenyl and 4-octenyl; alkynyl, for example, ethynyl, propargyl and 3-hexynyl; cycloalkyl, for example, cyclopropyl, cy-

clobutyl, cyclopentyl, cyclohexyl, 4-methylcyclohexyl, 2,6-dimethylcyclohexyl, and cyclooctyl; cycloalkylalkyl, for example, cyclopentylethyl and cyclohexylmethyl; monocarbocyclic aryl, for example, phenyl, p-tolyl, 3,5-dimethylphenyl and 3-ethylphenyl; and monocarbocyclic aryl-loweralkyl, for example, benzyl, 2-phenylethyl and 3-phenylpropyl. (Emphasis ours.]

Appellant further discloses a genus of compounds, having the same properties, in which the two R's of the above structure can be joined to form an alpha, beta-lower-alkylene bridge (hereinafter referred to as bridge compounds).[1]

The reference relied on by the Patent Office as an anticipation within the meaning of 35 U.S.C. § 102(a), is a publication of Stetter et al. (Stetter) appearing in Vol. 91 of Chemiche Berichte, pp. 1982–8, under date of September 15, 1958. Since that date of publication is less than one year prior to the application date herein there is no question of a statutory time bar under 35 U.S.C. § 102(b). It is acknowledged by appellant that since Stetter shows a compound which falls within the scope of the generic claim it is an anticipation, provided Stetter is available as a reference.

Referring to the structure diagrammed above, Stetter shows a compound in which the R groups are each isopropyl (Stetter's Compound VII), and a second compound in which the two R groups taken together are an ethylene bridge between the amide groups, thus forming a second ring (Stetter's Compound XI). Stetter shows Compound VII to be an intermediate in a chemical synthesis which can be described broadly as the preparation of cyclic

diamines by opening the rings of intermediate bicyclic compounds.[2]

In an attempt to remove Stetter as a reference under section 102(a), appellant filed a first affidavit under Rule 131 that shows reduction to practice, prior to the effective date of Stetter, of two compounds in which R in the structure shown above is respectively methyl and phenyl, and also an ethylene bridge compound, Stetter's Compound XI. On the basis of that showing, the examiner allowed four claims: claim 3, a broad or "generic" claim to bridge compounds which includes the bridge Compound XI of Stetter; and three species claims, claim 4 to the methyl species, claim 5 to the phenyl species, both of these being species within rejected claim 1, and claim 6 specifically to the bridge compound, Compound XI of Stetter.

The first affidavit did not, however, relate to the isopropyl species, the Stetter Compound VII, which falls within the scope of claims 1 and 2 on appeal. Since the examiner considered that affidavit insufficient to remove the generic claim 1 and 2 anticipating Compound VII, appellant filed a second affidavit which alleges conception of the generic invention prior to the effective date of Stetter. Apparently appellant cannot, or cares not to show specific data as to the prior invention of the species Compound VII of Stetter. Could he, this case would be governed by In re Stempel, 241 F.2d 755, 44 CCPA 820, holding in a genus-species case that all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show; when he has done that he has disposed of the reference.

1. From the record it appears that there is no generic claim in the case covering *both* the alpha, beta-lower-alkylene bridge compounds and the non-bridge compounds.

2. Specifically, N,N'–diisobutyryl hydrazine is alkylated with tetramethylene bromide; the resultant 1,2–diisobutyryl piperidazine (Stetter's Compound VII) is saponified to piperidazine, which is then condensed with succinic acid anhydride to produce 1,2–succinyl piperidazine (Stetter's Compound XI), then reduced to 10–aza–quinolizidine which in the hydrogenating dissociation undergoes ring opening to 1,6–diaza–cyclodecane, the final product, for which no utility is mentioned.

Because of its import, the body of the second affidavit is reproduced in full:

I, ROBERT L. CLARKE, being duly sworn, depose and say that:

I am the Robert L. Clarke who is the applicant in the above-identified application and who executed on April 30, 1962 the Antedating Affidavit submitted with the response filed May 1, 1962 in the above-identified application;

In the United States of America prior to September 15, 1958, I conceived the broad idea of the generic invention described in the above-identified application and embodied in Claims 1 and 2 thereof and I carried out the preparation of and had testing done on exemplary compounds as described in said antedating affidavit for the purpose of verifying the operability of said broad idea of the generic invention and I concluded from said preparation and testing of the exemplary compounds that the broad idea of the generic invention was operative as I conceived it;

And further I say not.

It is the position of the Patent Office that the second affidavit is of little evidentiary value[3] since it is no more than a self-serving declaration in the nature of a conclusion unsupported by corroborating affidavits or documentary exhibits, M.P.E.P. 715.05. The Patent Office contends further that, since the proof is merely that appellant preceded Stetter as to two species,[4] the species in Stetter which remains not antedated is a sufficient basis on which to reject the generic invention of claims 1 and 2, M.P.E.P. 715.03, and In re Steenbock, 83 F.2d 912, 23 CCPA 1244. In the solicitor's view, a claim which reads on species in a reference should be denied unless *each* of the species is directly antedated by a showing of prior reduction to practice thereof.

Appellant's position is equally absolute, that a reference can be antedated by proof of prior inventorship of *any* species since generic and species claims are directed to "substantially the same overall invention * * *." Appellant also refers to the rule of interference practice, that reduction to practice of a single species may be considered proof of reduction to practice of a generic count.

Those absolute and opposite positions reflect on the failure of Rule 131, calling for antedating with respect to "the invention," to provide for the modern problems inherent in chemical Markush genus-species situations, not foreseen in 1880[5] when the antedating affidavit practice began.

It is clear from In re Shokal, 242 F.2d 771, 44 CCPA 854, that appellant may, by a proper showing, overcome a reference which discloses a species within the generic claim, although he may not be able to show completion of that species prior to the effective date of the reference, where the reference is not a statutory time bar. Thus, indirect antedating of a reference is permitted in a proper case and the solicitor's view is contrary to existing law. However, we do not find, on the facts of this case, that appellant has established prior inventorship of so much of the invention, as defined in claims 1 and 2, as is necessary to antedate indirectly the species of the reference.

Rule 131(a) requires that facts be offered which show "completion of the invention" prior to the effective date of the reference in order to establish prima facie a case of prior inventorship. The term "completion" is further defined by the requirement of subsection (b) of Rule 131 that the facts must establish either reduction to practice, or conception coupled

3. The examiner said it was "incompetent," a clear misuse of the legal term. As explicitly called for in Rule 131, the affidavit of the *applicant* is indeed admissible; the weight to be given it is another question, with which we deal herein.

4. Appellant says 3 species; this question is considered infra, footnote 8.

5. McCrady, Patent Office Practice 252, (4th Ed., 1959).

with due diligence until a subsequent actual reduction to practice or the filing of the application. The requirement for such *facts* in establishing prima facie a case of prior inventorship has been articulated in the decision of this court in In re Garratt, 63 F.2d 113, 115, 20 CCPA 878, 882, 16 USPQ 369, 372. See Ex parte Stalego, 135 USPQ 37, 38 (Pat. Off.Bd.App.1961).

Appellant does not challenge the factual showing requirement of Rule 131 as being an invalid exercise of the power granted the Commissioner under 35 U.S.C. § 6 as relating to prima facie showings in an ex parte case, or as being contrary to long-established practice, M.P.E.P. 715.-03. Appellant argues that the two affidavits must be considered together, and that the facts to support the statements that the generic invention was conceived are supplied by the first affidavit. Appellant further argues that the first affidavit shows three species, and that "the two affidavits together are sufficient to constitute the requisite prima facie showing of inventorship, thereby to antedate * * * the Stetter et al. reference."

■ We agree that the two affidavits should be considered together. Appellant is not relying on the second affidavit alone. Although not essential, the second refers to the first in such manner as to incorporate it by reference. Further, the affidavit states that exemplary compounds in the first affidavit were prepared and tested, and that

> * * * from said preparation and testing of the exemplary compounds [appellant concluded] that the broad idea of the generic invention was operative as I conceived it * * *.

We think those statements may be taken as an allegation that the generic invention was reduced to practice. The isopropyl species of the Stetter reference is indeed mentioned in the specification, and thus amounts to a subsequent constructive reduction to practice of that species by appellant. However, there is no factual showing of *diligence* connecting the allegation of conception of the genus (and there is no allegation of con-

ception of the isopropyl species per se) to a corresponding constructive reduction to practice. Thus we must take appellant's position to be that the species shown in the first affidavit are the factual support required to give legal effect to the otherwise bald allegation of conception and reduction to practice of the entire genus; in short, we view appellant's position to be that the two affidavits taken together represent an actual reduction to practice of the invention represented in the generic claims.

■ We are completely appreciative of the thousands of compounds encompassed within the claims, but it is not the entire scope of the claims which is determinative of the issue here. Rather, it is how much the *reference* shows of the claimed invention that is crucial to the requirement of what the affidavit must show. In re Stempel, supra. If the question of how much need be shown in antedating affidavits is cast in terms of *support* for the *claims*, then an applicant would be required to show as much as is required by 35 U.S.C. § 112 to *support* a generic *claim*. However, we think such analysis in terms of support for the claims to be erroneous and improper here. We would add that an analysis in terms of the law involving "genus" and "species" does not promote a disposition of the issue here.

■ Thus, in *Stempel*, supra, the reference showed but a single compound within a claimed class of compounds, and appellant, showing facts probative of a reduction to practice of the *identical* compound, was able to overcome the reference. It is easily recognized that in *Stempel* "the invention" had not been described in a reference prior to the activities of appellant. Under the rule in *Stempel* an applicant has the burden of proving priority with respect to so much of the claimed invention as the reference happens to show. The rejection is proper under 35 U.S.C. § 102(a), In re Steenbock, supra, not because the reference describes the invention, but merely because the appealed claims read upon, or encompass, the reference disclosure.

We believe the rule in *Stempel* supplements our decision in In re Shokal, supra, and that rule for antedating references is not limited to fact situations where the inventor can show priority as to the *identical* compound described in the reference. It seems that in an appropriate case an applicant should not be prevented from obtaining a patent to an invention where a compound described in a reference would have been obvious to one of ordinary skill in the art in view of what the affiant proves was completed with respect to the invention prior to the effective date of the reference. This is particularly true where the inventor had already appreciated that the invention was generic in nature from his work on diverse species and was endeavoring to determine by exercise of reasonable diligence the precise scope of the invention. Claims do define "the invention," but in a given case may be of varying scope while still defining the same invention; what is "the invention" should not be confused with the scope thereof in this area of the law dealing with establishing prima facie a case of prior inventorship.

It follows from the above views that antedating affidavits must contain facts showing a completion of "the invention" commensurate with the extent the invention is shown in the reference, whether or not it be a showing of the identical disclosure of the reference. In our view, where it can be concluded that facts, offered in a Rule 131 affidavit in support of a general allegation of conception and reduction to practice of the invention, would persuade one of ordinary skill in the art to a reasonable certainty that the applicant possessed *so much of the invention as to encompass the reference disclosure,* then that showing should be accepted as establishing prima facie a case of inventorship prior to the reference, sufficient for the purpose of overcoming the reference in an ex parte case. See In re Shokal, supra, 242 F.2d 771, 44 CCPA at 859. Upon satisfying that test, species of the reference falling within the claim may be antedated indirectly. On a review of all the evidence presented here,

we conclude that appellant has not established that to be the case.

We think that all types of evidence should be considered, whether the facts are with reference to considerations of structure alone, or properties, or both. As noted in In re Shokal (with a caveat that support is not the controlling factor), 242 F.2d at 773, 44 CCPA at 857:

It appears to be well settled that a single species can rarely, if ever, afford sufficient support for a generic claim. In re Soll, 97 F.2d 623, 25 C.C.P.A., Patents, 1309 ; In re Wahlforss, 117 F.2d 270, 28 C.C.P.A., Patents, 867. The decisions do not however fix any definite number of species which will establish completion of a generic invention and it seems evident therefrom that such number will vary, depending on the circumstances of particular cases. Thus, in the case of a small genus such as the halogens, consisting of four species, a reduction to practice of three, or perhaps even two, might serve to complete the generic invention, while in the case of a genus comprising hundreds of species, a considerably larger number of reductions to practice would probably be necessary.

Thus, we think in an appropriate case a single species could be sufficient to antedate indirectly a different species of a reference.

Here, the isopropyl species of Stetter which must be antedated is the first member of a structurally homologous series in which R in the structure depicted above is a branched-chain alkyl radical. The first affidavit of appellant shows both the preparation of the methyl compound, the first member of the alkyl series, and a determination that the methyl compound has diuretic activity. While other members of the alkyl series, or even the branched-chain alkyl series, might be said to be structurally evident or prima facie obvious to one skilled in the art upon preparation of the methyl species, the evidence is *inadequate* to show that appellant considered any other members of

those series to be part of the invention. The fact that the species shown in the affidavit are members of an homologous series, e. g. alkyl, is not necessarily conclusive that alkyl is of such significance that another member of the series is part of the invention.

Further, there is no evidence here that one of ordinary skill in the art would have considered, or that appellant himself considered that the isopropyl species reasonably could be expected to have properties [6] related to that found for the methyl species, such that the isopropyl species would be properly included within the invention. We fail to find facts showing appellant had any appreciation that the invention was of such scope as to include *or point to* the isopropyl species of Stetter.[7] The requirement is for facts and not conclusions alone, In re Garratt, supra.

Although a phenyl species is also shown in the first affidavit, appellant's position is not strengthened thereby. There is no evidence that, prior to the effective date of Stetter, appellant determined that the phenyl species was part of the invention. In our view, the affidavit showing with respect to phenyl is little related to that portion of the genus, the alkyl and branched-chain alkyl series, within which lies the isopropyl species of Stetter. We recognize that a showing with respect to another *type* of substituent within the genus claim, though not within the alkyl or branched-chain alkyl series thereof, could be relevant on the question of antedating the isopropyl species of the reference. Where it could be shown that such a diverse substituent as phenyl was then known to have properties related to those of the methyl species, it would indicate that the invention is relatively independ-

ent of the nature of the R substituent. That being so, a compound structurally further removed could be effective to antedate the compound of the reference. Thus, an R substituent even more diverse than methyl might serve to antedate isopropyl where it is also shown that the structure of the R substituent is of relatively little effect in the compound as a whole. However, the affidavit does not show the phenyl species to have properties similar to methyl, and hence there is no evidence of such independence in the record. We must conclude that the showing only of the making of the phenyl species is of little probative value on the issue of whether the isopropyl species is antedated.[8]

On the facts before us we are not convinced that the showings in the affidavits are adequate to antedate indirectly Compound VII of Stetter. We cannot say that it is reasonable to conclude from the affidavit showings that so much of the invention as encompasses the reference species was in appellant's possession, and thereby reduced to practice prior to the effective date of the reference.

For the reasons discussed the decision of the board is affirmed.

Affirmed.

WORLEY, C. J., and RICH, J., concur in the result.

ALMOND, Judge (concurring).

While I agree that to prevail appellant must present evidence to "persuade one of ordinary skill in the art to a reasonable certainty that the applicant possessed *so much of the invention as to encompass the reference disclosure,*" and while I agree that appellant has failed to meet

---

6. We mean simply the common property or properties possessed by all the species which qualify them for inclusion in a genus. It is the common property or properties which define and delimit the genus.

7. It is clear that if appellant's proofs were satisfactory here to establish the genus of claim 2, he would carry claim 1 as well.

8. What is pointed out here about the relevancy of showings with regard to the phenyl species may be true of the showings with regard to the ethylene bridge species (Stetter's Compound XI), shown and tested and found to have antiviral activity in the first affidavit, but apparently only relevant on the factor of relative independence because the bridge compound is outside the claimed genus.

that test, I cannot agree with the manner in which the majority applies that test to reach this result.

My basic disagreement with the majority stems from what I believe to be its preoccupation with statements which serve to dilute or misconceive the above test. An example of this is the statement just preceding the above quoted test which reads:

It follows from the above views [referring to a discussion of Stempel and Shokal] that antedating affidavits must contain facts showing a completion of "the invention" commensurate with the extent the invention is shown in the reference, whether or not it be a showing of the identical disclosure of the reference.

This should not be taken to mean that a "commensurate" showing is all that is required to overcome the disclosure in a prior art reference, else the facts of this case would require reversal of the board's decision. Appellant's affidavit shows: (1) preparation of the methyl species; (2) testing of the latter compound and determining its diuretic activity; (3) preparation of the ethylene bridge species; (4) testing of the latter compound and determining its antiviral activity; and (5) preparation of the phenyl species.

By contrast, Stetter shows, as far as the issue here is concerned: (1) preparation of the isopropyl species.

Manifestly, appellant's showing is at least commensurate with the reference disclosure.

I consider it also to be of more than passing significance that Stetter is completely silent as to a utility (property) for any of the compounds therein disclosed, a fact not mentioned by the majority. While the majority indicates complete approval of the Stempel principle and its extension in this case, this is not

borne out by its treatment on the merits. In Stempel, and in In re Wilkinson, 304 F.2d 673, 50 CCPA 701, this court laid down the rule that a reference disclosure may be antedated by a Rule 131 affidavit which shows only as much of the claimed invention as is disclosed by the reference. In the latter case, we held that an applicant need not establish utility in a Rule 131 affidavit if the reference does not disclose a utility. Yet the majority clearly requires a showing of utility. This is so, in my view, not because the reference discloses a utility but because such a showing would serve to link together the compounds which were prepared prior to the date of the reference, thereby evidencing "possession" by appellant of the compounds closely related in structure to the tested compounds. It is this linking function which a showing of common utility (property) serves that makes it important in a case involving indirect antedating of a reference disclosure.[1]

I also wish it made clear that I would not limit the evidence necessary to establish the independence of R to groups *within the genus claim*. As a matter of establishing this scientific fact, which is all that is involved, the best evidence *as to the effect of R* on the properties exhibited by a chemical compound may well come from a consideration of compounds outside the genus, so long as the remainder of the molecule remains the same.

The area of the law dealt with in this appeal is important. At the minimum, I think the bar and the Patent Office should be aware of all the pertinent facts of record and our thinking with regard to those facts—hence this concurring opinion. I perceive definite harm in propounding a test governing the issue presented by this appeal, and then resorting to other statements not in keeping with that test.

1. I do not mean to intimate, however, as I feel the majority has, that a showing of common utility is the *only* means by which indirect antedating can be accomplished. For example, the mere preparation of sufficient representative compounds would be enough, it seems to me, where as here, the reference is silent as to utility. The spirit of Stempel and Wilkinson would appear to permit such.