This Opinion is a
Precedent of the TTAB

Hearing: May 23, 2018                                   Mailed: October 3, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re American Cruise Lines, Inc.*

———

Serial No. 87040022

———

Francis J. Gorman and Taylor W. Beckman of Gorman & Williams,
    for American Cruise Lines, Inc.

Steven W. Ferrell, Jr., Trademark Examining Attorney, Law Office 121,
    Kevin Mittler, Managing Attorney.

———

Before Taylor, Bergsman and Lynch,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

American Cruise Lines, Inc. ("Applicant") seeks registration on the Principal

Register of the mark AMERICAN CONSTELLATION (in standard characters) for

"cruise ship services; transportation of passengers by ship; arranging and conducting

cruises for others," in Class 39.[1]

---

[1] Application Serial No. 87040022 was filed on May 17, 2016, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce. On September 11, 2017, Applicant filed an Amendment to Allege Use. Applicant claims acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), in part, as to AMERICAN; and disclaims the exclusive right to use the word "Constellation."

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C § 1052(d), on the ground that Applicant's mark so resembles the registered marks CONSTELLATION (typed drawing)[2] and CELEBRITY CONSTELLATION (standard characters),[3] owned by the same entity, both for "cruise ship services, arranging and conducting cruises for others, and transportation of passengers by ship," in Class 39, as to be likely to cause confusion.

---

The Examining Attorney initially required a disclaimer of the word AMERICAN and a verified declaration supporting the application because the original application was unsigned. In response to the requirement to disclaim the exclusive right to use the word "American," Applicant, in the alternative, amended its application to claim that the word "American" acquired distinctiveness when used in connection with Applicant's services as evidenced by Applicant's ownership of Registration No. 3019486 for the mark AMERICAN CRUISE LINES (standard characters), Registration No. 3025982 for the mark AMERICAN CRUISE LINES and design, and Registration No. 4637450 for the mark AMERICAN RIVER LINES (standard characters), all for "cruise ship services; transportation of passengers by ship," and Registration No. 5233248 for the mark AMERICAN PRIDE (standard characters) for "cruise ship services offered by riverboat; transportation of passengers by riverboat." September 22, 2017 Request for Reconsideration (4 TTABVUE 22 and 25-26). The Examining Attorney withdrew the requirement for a disclaimer of the word "American" finding Applicant's claim of acquired distinctiveness to be sufficient based on the evidence submitted. October 4, 2017 Denial of Request for Reconsideration (5 TTABVUE 3). We note that although Applicant's claim of acquired distinctiveness in part was offered in the alternative, Applicant did not argue on appeal the underlying requirement based on AMERICAN being considered geographically descriptive. The requirement for a verified declaration was satisfied.

Applicant also disclaimed the exclusive right to use the word "Constellation." September 22, 2017 Request for Reconsideration (4 TTABVUE 22). Pursuant to Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), "[a]n applicant may voluntarily disclaim a component of a mark sought to be registered."

[2] Registration No. 2618928, registered September 10, 2002; renewed.

[3] Registration No. 3517520, registered October 14, 2008; Sections 8 and 15 affidavits accepted and acknowledged.

When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. The appeal has been fully briefed, and an oral hearing took place on May 23, 2018. We reverse the refusal to register.

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*du Pont*") *cited in B&B Hardware, Inc. v. Hargis Indus., Inc.,* 135 S. Ct. 1293, 113 USPQ2d 2045, 2049 (2015); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We have considered each *du Pont* factor that is relevant or for which there is evidence of record. *See M2 Software, Inc. v. M2 Commc'ns, Inc.,* 450 F.3d 1378, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006); *ProMark Brands Inc. v. GFA Brands, Inc.,* 114 USPQ2d 1232, 1242 (TTAB 2015) ("While we have considered each factor for which we have evidence, we focus our analysis on those factors we find to be relevant."). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *See In re Chatam Int'l Inc.*, 380 F.2d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004)*; Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."); *see also In re i.am.symbolic, LLC,* 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The

likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods'") (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)).

During the prosecution of its application, Applicant submitted two consents to the use and registration of its mark.[4] The existence of a consent agreement relates to one of the *du Pont* factors, namely the market interface between Applicant and Registrant. In order to properly weigh the importance of the consent agreement in the context of a full *du Pont* analysis, we will first address the other relevant factors.

I.   The similarity or dissimilarity and nature of the services and established, likely-to-continue channels of trade.

The services are identical. Applicant, in its brief, concedes that the services are the same.[5]

Because the services are identical, we must presume that the channels of trade and classes of purchasers are the same. *See In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (legally identical goods are presumed to travel in same channels of trade to same class of purchasers); *In re Yawata Iron & Steel Co.,* 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same); *United Glob. Media Grp., Inc. v. Tseng*, 112 USPQ2d 1039, 1049 (TTAB

---

[4] Consent to Use and Registration of the trademark AMERICAN CONSTELLATION attached to the February 28, 2017 Office Action (TSDR 6); September 22, 2017 Request for Reconsideration (4 TTABVUE 175).

[5] Applicant's Brief, p. 12 (7 TTABVUE 13).

2014); *Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.,* 101 USPQ2d 1022, 1028 (TTAB 2011). Applicant, in its brief, did not challenge the presumption that the channels of trade and classes of purchasers are the same.

These factors weigh in favor of finding that there is a likelihood of confusion.

II.   The conditions under which and buyers to whom sales are made, i.e., "impulse" vs. careful, sophisticated purchasing.

As noted above, because the services are identical and are offered in the same channels of trade, the classes of consumers are the same. Applicant, in its brief, concedes that the classes of consumers are the same.[6]

Applicant asserts that "[t]he conditions of the purchase, however, are not average" because selecting a cruise is "based on careful research and investigation in light of the purchaser's travel goals and travel budget"; they are not impulse purchases.[7] Applicant's assertion is corroborated by the declaration of Charles B. Robertson, Applicant's Vice President of Marketing. Mr. Robertson provided the following testimony:

> Customers who book passage cruises with American Cruise Lines are sophisticated purchasers. Their purchase decisions are based on careful research and investigation in light of their travel goals and travel budget. [Applicant's] customers would not purchase a cruise based on an "impulse buy." There is no likelihood of confusion when the purchase of a cruise is done so carefully. Cruise customers learn during their investigations and considerations that numerous ships share terms in common. Examples include Carnival's LEGEND and Royal Caribbean's LEGEND OF THE SEAS; Radisson's SEVEN SEAS NAVIGATOR and

---

[6] Applicant's Brief, p. 12 (7 TTABVUE 13).

[7] *Id.*

> Royal Caribbean's NAVIGATOR OF THE SEAS; Radisson's SEVEN SEAS NAVIGATOR and Royal Caribbean's MARINE OF THE SEAS; and [Applicant's] INDEPENDENCE and Royal Caribbean's INDEPENDENCE OF THE SEAS. This is typical in the industry because it does not cause confusion.[8]

Also, in the second consent agreement filed to support the registration of Applicant's mark, Adam Goldstein, Registrant's Chief Operating Officer, stated that cruise ship consumers exercise a heightened degree of care when selecting a cruise.

> (4) Cruise customers make studied and sophisticated decisions with respect to choosing a cruise. Our respective customers are not impulse purchasers; instead, the purchasing decision with respect to a cruise is the result of investigations and careful consideration. There is no likelihood of confusion when the purchase of a cruise is done so carefully.[9]

The Examining Attorney argues that Applicant's position that cruise ship services consumers exercise a heightened degree of care is unsupported by any evidence because the only evidence regarding the degree of consumer care is the above-noted testimony of Applicant's Vice President of Marketing and statement by Registrant's Chief Operating Officer.[10] The Examining Attorney takes the position that the statements in the declaration of Applicant's officer and statements in the consent agreement must be corroborated by additional evidence to be credited. The

---

[8] September 22, 2017 Request for Reconsideration (4 TTABVUE 177-78); *see also* "Consent to Use and Registration of the trademark AMERICAN CONSTELLATION" attached to the February 28, 2017 Office Action (TSDR 6).

References to the TSDR database are to the downloadable .pdf format.

[9] "Consent to Use and Registration of the Trademark AMERICAN CONSTELLATION," September 22, 2017 Request for Reconsideration (4 TTABVUE 175).

[10] Examining Attorney's Brief (10 TTABVUE 14).

Examining Attorney's position incorrectly disregards that the statements were made by two people who work in the cruise ship service industry and the declaration and agreement containing those statements are part of the record. *See Amalgamated Bank of N.Y. v. Amalgamated Trust & Savings Bank,* 842 F.2d 1270, 6 USPQ2d 1305, 1308 (Fed. Cir. 1988) (criticizing the Board for presuming that its knowledge of the banking industry exceeds the knowledge of parties in that industry); *In re Farrenkopf,* 713 F.2d 714, 219 USPQ 1, 6 (Fed. Cir. 1983) (an affidavit is a competent form of evidence in *ex parte* proceedings before the PTO to the extent that it refers to matters known to or observed by the affiant); *In re Clarke,* 356 F.2d 987, 148 USPQ 665, 668 & n.3 (CCPA 1966) (it is legally erroneous to label an affidavit on relevant facts "incompetent" on the basis that it is self-serving and uncorroborated, although those two circumstances may go to its weight). Even if the declaration of Applicant's officer were deemed less persuasive (e.g., because it is self-serving or uncorroborated), the statement of Registrant's officer certainly must be considered probative evidence on this point. The Examining Attorney failed to submit any evidence to rebut Applicant's evidence that cruise ship services consumers exercise a heightened degree of care when selecting a cruise.

We find that although the classes of consumers are the same, those consumers exercise a heightened degree of care when selecting cruise ship services.

III.    The similarity or dissimilarity of the marks.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation

and commercial impression. *du Pont,* 177 USPQ at 567. "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Davia,* 110 USPQ2d 1810, 1812 (TTAB 2014). In comparing the marks, we are mindful that where, as here, the services are identical, the degree of similarity necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the services. *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012); *Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Jansen Enters. Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007); *Schering-Plough HealthCare Prod. Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007).

"The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning LLC,* 101 USPQ2d at 1721; *see also San Fernando Elec. Mfg. Co. v. JFD Elec. Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Rests. Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd mem.,* 972 F.2d 1353 (Fed. Cir. 1992).

We focus our analysis on Registrant's mark CONSTELLATION because if confusion is likely between that mark and AMERICAN CONSTELLATION, there is no need for us to consider the likelihood of confusion with CELEBRITY CONSTELLATION. Conversely, if there is no likelihood of confusion between Registrant's mark CONSTELLATION and Applicant's mark AMERICAN

CONSTELLATION, then there would be no likelihood of confusion with CELEBRITY CONSTELLATION. *See, e.g., In re Max Capital Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

The marks are similar because they share the word "Constellation."[11] The word "Constellation" is defined as "any various groups of stars to which definite names have been given" or "a group of configuration of ideas, feelings, characteristics, objects, etc., that are related in some way: *a constellation of qualities that made her particularly suited to the job*."[12] Accordingly, the word "Constellation" is an arbitrary word when used in connection with cruise ship services entitled to broad scope of protection or exclusivity of use.[13]

The word "American" is defined, *inter alia*, as "of or relating to the United States of America or its inhabitants."[14] Thus, the marks have a similar meaning and engender a similar commercial impression because the name AMERICAN

---

[11] We do not consider the disclaimer of "CONSTELLATION" in Applicant's mark to change our analysis. A disclaimer does not remove the disclaimed portion from the mark for the purposes of comparing marks in a likelihood of confusion determination. *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 103 USPQ2d 1435, 1440 (Fed. Cir. 2012); *In re Iolo Techs., LLC*, 95 USPQ2d 1498, 1499 (TTAB 2010). Further, the consuming public is generally not aware of disclaimers in trademark applications and registrations that reside only in the USPTO's records. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

[12] Dictionary.com Unabridged based on the RANDOM HOUSE DICTIONARY (2018). The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd,* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *Threshold.TV Inc. v. Metronome Enters. Inc.*, 96 USPQ2d 1031, 1038 n.14 (TTAB 2010); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006).

[13] There is no evidence of any third-party use or registration of the word "Constellation."

[14] Dictionary.com Unabridged based on the RANDOM HOUSE DICTIONARY (2018).

CONSTELLATION means and engenders the commercial impression of an American star or group.

While there is no explicit rule that likelihood of confusion automatically applies where a junior user's mark contains the whole senior user's mark, the fact that the cited registration is subsumed by Applicant's mark increases the similarity between the two. *See, e.g., The Wella Corp. v. Cal. Concept Corp.,* 558 F.2d 1019, 194 USPQ 419, 422 (CCPA 1977) (CALIFORNIA CONCEPT and surfer design for men's cologne, hair spray, conditioner and shampoo is likely to cause confusion with the mark CONCEPT for cold permanent wave lotion and neutralizer); *Coca-Cola Bottling Co. of Memphis, Tenn., Inc. v. Joseph E. Seagram and Sons, Inc.,* 526 F.2d 556, 188 USPQ 105 (CCPA 1975) (applicant's mark BENGAL LANCER for club soda, quinine water and ginger ale is likely to cause confusion with BENGAL for gin); *In re Toshiba Med. Sys. Corp.,* 91 USPQ2d 1266, 1271 (TTAB 2009) (applicant's mark VANTAGE TITAN for medical magnetic resonance imaging diagnostic apparatus confusingly similar to TITAN for medical ultrasound diagnostic apparatus); *Broadcasting Network Inc. v. ABS-CBN Int'l,* 84 USPQ2d 1560, 1568 (TTAB 2007) (respondent's mark ABS-CBN is similar to petitioner's mark CBN both for television broadcasting services); *In re El Torito Rests., Inc.,* 9 USPQ2d 2002, 2004 (TTAB 1988) (applicant's mark MACHO COMBOS for food items confusingly similar to MACHO for restaurant entrees); *Johnson Publ'g Co. v. Int'l Dev. Ltd.,* 221 USPQ 155, 156 (TTAB 1982) (applicant's mark EBONY DRUM for hairdressing and conditioner is likely to cause confusion with EBONY for cosmetics).

We find that the marks are similar in their entireties in terms of appearance, sound, connotation and commercial impression.

## IV.     Consent Agreement.

We now turn to examine the two consent agreements. In both agreements Applicant and Registrant state that there will be no likelihood of confusion. Their second consent agreement is a bit more detailed and sets forth the following reasons:[15]

- Applicant and Registrant provide cruise ship services in different areas of the world;

- Applicant always refers to its ship as AMERICAN CONSTELLATION and agrees not to refer to it as CONSTELLATION;[16]

- Cruise ship services customers exercise a heightened degree of care when selecting a cruise ship service;

- Cruise ship services customers know that Applicant uses "American" as a house mark;

- For over ten years, Applicant's AMERICAN INDEPENDENCE cruise liner and Royal Caribbean's INDEPENDENCE OF THE SEAS cruise liner have coexisted without any reported instances of confusion;[17] and

---

[15] September 22, 2017 Request for Reconsideration (4 TTABVUE 175).

[16] In the Consent to Use and Registration of the trademark AMERICAN CONSTELLATION attached to the February 28, 2017 Office Action (TSDR 6), Registrant's Chief Operating Officer stated that "consumers are familiar with [Applicant's] family of 'AMERICAN' marks for cruise ship services, and that they will therefore associate AMERICAN CONSTELLATION with [Applicant]."

[17] As discussed above, Applicant's Vice President of Marketing testified that cruise ship services consumers know that cruise ship services often use similar marks. "Examples include Carnival's LEGEND and Royal Caribbean's LEGEND OF THE SEAS; Radisson's

- Applicant and Registrant agree that confusion is unlikely because "different cruise lines operate numerous ships under names that share terms in common. Examples include Carnival's LEGEND and Royal Caribbean's LEGEND OF THE SEAS; Radisson's SEVEN SEAS NAVIGATOR and Royal Caribbean's MARINER OF THE SEAS; and [Applicant's] INDEPENDENCE and Royal Caribbean's INDEPENDENCE OF THE SEAS."[18]

The Examining Attorney argues that the consent agreements are not probative because they are "naked" consents that do not describe the arrangements undertaken by Applicant and Registrant to avoid confusion and because the parties have not agreed to make efforts to prevent confusion or to cooperate and take steps to avoid any confusion that may arise in the future.[19] A "naked consent agreement" is an agreement that contains little more than the registrant's consent to registration and perhaps a statement that confusion is believed to be unlikely. TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1207.01(d)(viii) (October 2017) ("TMEP"). The second consent agreement in this appeal is not a naked consent agreement because Applicant

---

SEVEN SEAS NAVIGATOR and Royal Caribbean's NAVIGATOR OF THE SEAS; Radisson's SEVEN SEAS NAVIGATOR and Royal Caribbean's MARINE OF THE SEAS; and [Applicant's] INDEPENDENCE and Royal Caribbean's INDEPENDENCE OF THE SEAS." September 22, 2017 Request for Reconsideration (4 TTABVUE 177-78).

In its brief, Applicant proffers that "Royal Caribbean merged and became the parent of Celebrity Cruises in 1997." Applicant's Brief, p. 14 n.1 (7 TTABVUE 15). Celebrity Cruises, Inc. is the Registrant.

[18] Consent to Use and Registration of the trademark AMERICAN CONSTELLATION attached to the February 28, 2017 Office Action (TSDR 6).

[19] Examining Attorney's Brief (10 TTABVUE 16).

and Registrant listed five reasons why they believed that confusion was not likely. *See In re Donnay Int'l, S.A.*, 31 USPQ2d 1953, 1956 (TTAB 1994) (The Board noted that a more "clothed" agreement would supply the "basis for the consent *and/or* undertaking to avoid confusion" (emphasis added)). In fact, in his brief, the Examining Attorney repeated those five facts without explaining why they are not probative.[20]

A provision in the consent agreement that the parties agree to make efforts to prevent confusion or to cooperate and take steps to avoid any confusion that may arise in the future may render the agreement *more* probative, but it is not an essential provision for the agreement to have probative value. The Examining Attorney has not cited any authority that such a requirement is mandatory. As noted in *In re Donnay*, 31 USPQ2d at 1956, "the more information that is in the consent agreement as to why the parties believe confusion to be unlikely, and the more evidentiary support for such conclusions in the facts of record or in the way of undertakings by the parties, the more we can assume that the consent is based on a reasoned assessment of the marketplace, and consequently the more weight the consent will be accorded." However, no authority requires that parties explicitly agree to make efforts to prevent confusion or to cooperate and take steps to avoid any confusion that may arise in the future as a prerequisite to giving some weight to a consent agreement. *In re Mastic Inc.,* 829 F.2d 1114, 4 USPQ2d 1292, 1294-95 (Fed. Cir. 1987) states:

---

[20] Examining Attorney's Brief (10 TTABVUE 15).

> If … the consent is "clothed" with the parties' agreement to undertake specific arrangements to avoid confusion of the public, as in *DuPont,* the parties' assessment of no likelihood of confusion  is entitled to greater weight, not because of the consent itself, but because such arrangements are additional factors which enter into the likelihood of confusion.

While in some cases such as *In re Four Seasons Hotels Ltd.,* 987 F.2d 1565, 26 USPQ2d 1071, 1073 (Fed. Cir. 1993), provisions regarding future undertakings of the parties to avoid and address confusion have factored into the persuasiveness of the consent agreement to weigh against likely confusion, the cases do not hold that such a provision must be included in a consent agreement. While the inclusion of provisions to avoid any potential confusion are preferred and probative in consent agreements, they are not mandatory.

The consent agreement in this appeal constitutes more than a mere naked consent and, therefore, ought to play a more dominant role in the likelihood of confusion analysis. *Id.*; *du Pont,* 177 USPQ at 568. Applicant and Registrant included in their agreement several credible reasons they consider confusion unlikely, and these reasons are corroborated by other evidence in the record, including the aforementioned declaration testimony. The provision that Applicant and Registrant provide cruise ship services in different areas of the world is not reflected in the description of services and, therefore, it is not probative. *See Viterra*, 101 USPQ2d at 1908 (absent trade channel restrictions in the identification, goods or services must be deemed to travel in all appropriate trade channels to all potential purchasers). However, the remaining four provisions of the agreement – (i) Applicant will always refer to itself as AMERICAN CONSTELLATION and never use CONSTELLATION

alone, (ii) relevant purchasers exercise a heightened degree of purchasing care, (iii) relevant purchasers recognize "American" as Applicant's house mark, and (iv) different cruise lines operate numerous ships under names that share terms in common – are probative that the consent agreement reflects the reality of no likelihood of confusion in marketplace.[21] Thus, the consent to use and register Applicant's mark weighs heavily against finding that there is a likelihood of confusion.

## V. Analyzing the factors.

In *du Pont*, the Court of Customs and Patent Appeals stated as follows:

> [W]hen those most familiar with use in the marketplace and most interested in precluding confusion enter agreements designed to avoid it, the scales of evidence are clearly tilted. It is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't. A mere assumption that confusion is likely will rarely prevail against uncontroverted evidence from those on the firing line that it is not.

177 USPQ at 568.

Accordingly, "clothed" consent agreements where "competitors have clearly thought out their commercial interests" should be given great weight, and the USPTO should not substitute its judgment concerning likelihood of confusion for the judgment of the real parties in interest without good reason, that is, unless the other relevant factors clearly dictate a finding of likelihood of confusion. *See In re Four*

---

[21] As noted above, Applicant disclaimed exclusive rights to "CONSTELLATION," and Applicant's Vice President of Marketing testified that when customers are shopping for cruises, they learn that "numerous ships share terms in common." September 22, 2017 Request for Reconsideration (4 TTABVUE 177-78).

*Seasons Hotels Ltd.*, 26 USPQ2d at 1073 (quoting *In re N.A.D. Inc.*, 754 F.2d 996, 224 USPQ 969 (Fed. Cir. 1985)); *see also du Pont*, 177 USPQ at 568.

Although the marks are similar, the services are identical and we must presume that the channels of trade and classes of consumers are the same, because it appears on this record that consumers for cruise ship services exercise a heightened degree of care due to the industry practice of different cruise lines using some of the same terms to name ships without engendering confusion, and because Applicant and Registrant have executed two consents to use and register, we find that Applicant's mark AMERICAN CONSTELLATION for "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" is not likely to cause confusion with the registered marks CONSTELLATION and CELEBRITY CONSTELLATION both for "cruise ship services, arranging and conducting cruises for others, and transportation of passengers by ship."

**Decision**: The refusal to register Applicant's mark AMERICAN CONSTELLATION is reversed.